UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VENTURE SOLUTIONS, LLC,
     Plaintiff,

v.

MICHAEL MEIER and CHRISTOPHER
WILLIAMS,
     Defendants and Counter-Plaintiffs

v.

VENTURE SOLUTIONS, LLC;
TRANSCORR, LLC; TRANSCORR
BROKERAGE, LLC; TRANSCORR
LEASING, LLC; TRANSCORR
NATIONAL LOGISTICS, LLC; TC
HOLDING COMPANY, LLC;
SCHWARZ PARTNERS;
TRANSCORR GLOBAL SOLUTIONS;
and VENTURE CONNECT, LLC,

     Plaintiff and Counter-Defendants.
_____/

Case No.: 21-12299

Robert H. Cleland
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO
DISMISS COUNTERCOMPLAINT (ECF No. 16)**

## I.   PROCEDURAL HISTORY

Plaintiff Venture Solutions, LLC, ("Plaintiff") filed this Computer Fraud and

Abuse Act and misappropriation of trade secrets suit on December 23, 2021.  (ECF

No. 1).  Defendants Michael Meier and Christopher Williams ("Defendants") filed

an answer (ECF No. 6) and a request for summons for the anticipated counter-

defendants.  The Court denied the request for summons.  The Court stated it "will

issue a summons only for the initiation of an entirely new action or a third-party

complaint.  Defendant's counterclaim move against non-parties has the shoe on the

wrong foot."  (ECF No. 12, PageID.156).  The Court also noted that the

counterclaims lacked clarity as to which were raised against which party or if

Plaintiff was named as a counter-defendant.  (*Id.* at PageID.156-57).

Defendants filed an amended countercomplaint on March 10, 2022.  (ECF

No. 13).  Plaintiff moved to dismiss the amended countercomplaint on March 21,

2022.  (ECF No. 16).  The undersigned heard oral argument on the motion on June

7, 2022.  This matter is now ready for report and recommendation.

For the reasons discussed below, the undersigned recommends that

Plaintiff's motion be granted in part and denied in part.

## II.    FACTUAL BACKGROUND

A.    Plaintiff's Complaint

Plaintiff alleges it is a division and wholly owned subsidiary of TC Holdco.

In 2014, Plaintiff hired Meier and Williams to establish and manage Venture

Solutions, the Plaintiff, which had yet to be created.  (ECF No. 1, PageID.5).

Meier was president of Venture Solutions, LLC; Williams was vice president of

Venture Solutions, LLC.

Plaintiff invests resources in developing confidential and proprietary information for its clients, and implemented policies and procedures to protect against employees improperly accessing, misusing, or disclosing that confidential and proprietary information and trade secrets.  (*Id.* at PageID.6-7).  It created a computer use policy for all employees that forbids any illegal use of information stored in computers or using such information in violation of any other company policy.  (*Id.* at PageID.7).  The policy provides that, while users may connect non-company devises to company devises, users may not copy confidential or proprietary information from a company information system to the personal device without express permission.  (*Id.* at PageID.9).

On November 8, 2021, Meier informed Venture's CEO that he and Williams were "going to move on."  (*Id.* at PageID.21, ¶ 52).  On November 17, 2021, Plaintiff confirmed with counsel for Defendants that their intent was to end their employment effective December 31, 2021.  On or about November 22, 2021, Plaintiff learned of Meier's and Williams' intentions to work for a competitor.  The Defendants were informed that day that Plaintiff elected to accept their resignation effective that date.  (*Id.* at PageID.21-22).

Plaintiff later learned that Meier and Williams began violating company policy during October 2021 by accessing the server and emails either to delete company information or to electronically transfer confidential documents,

analyses, customer reports, and other trade secret information to their personal storage devices.  (*Id.* at PageID.11-15, 22).  A forensic analysis of Meier's and Williams' company computers confirmed their unauthorized use and downloading of company files.

Plaintiff sues Defendants for injunctive relief and for violating the Computer Fraud and Abuse Act, misappropriation of trade secrets, violation of the Michigan Uniform Trade Secrets Act, common law conversion, statutory conversion in violation of M.C.L. § 600.2919a, breach of fiduciary duty, unjust enrichment, and conspiracy.

B.   Defendants' Proposed Countercomplaint

Defendants filed a countercomplaint against Plaintiff and "join[ed]" Schwarz Partners; TransCorr, LLC; TC Holding Company, LLC; Venture Connect, LLC; TransCorr Brokerage, LLC; TransCorr Leasing, LLC; TransCorr National Logistics, LLC; and TransCorr Global Solutions, LLC, as counter-defendants "because the Counterclaims arise out of the same transaction and occurrence as the subject matter of Plaintiff's Complaint—Meier's and Williams' employment relationship with and ownership of Venture Solutions."  (ECF No. 13, PageID.159).  Defendants allege the following.

Meier and Williams executed an agreement with Schwarz Partners, TransCorr, and TC Holding Company to be president and vice president,

respectively, of a newly formed division of TransCorr Global Solutions, LLC

("TGS").  In 2014, Defendants formed TGS, which became Venture Solutions,

LLC.  (*Id.* at PageID.161).

Meier and Williams signed employment agreements during the fall of 2014.

The agreements stated that the employment offer "anticipates that between your

start date (Fall 2014) and January 1, 2015 you and TransCorr will transition your

employment arrangement with TransCorr to employment with a separate

subsidiary of TransCorr, LLC with which you will have detailed executive

employment agreement providing for or contemplating, among other things, your

equity ownership in that new entity, a detailed executive bonus plan, an equity

incentive plan, and an incentive unit award agreement."  (*Id.* at PageID.162, ¶ 20;

ECF No. 13-1, PageID.174, 176).  Schwarz Partners, TransCorr, TC Holding,

Meier, and Williams developed a "term sheet" setting forth their ownership

interests in Venture Solutions.  The term sheet provided that Meier and Williams

could own up to 50% of Venture Solutions.  (ECF No. 13, PageID.162).

An ownership plan was not finalized.  According to Defendants, in a July

13, 2020 email to Meier and Williams, Tom Bennet, a principle of Schwarz

Partners (a majority owner of TC Holdings), wrote that Form K-1s, Partner's Share

of Income Forms, were not needed in 2019 but that partnership would be solidified

in 2021 at the Venture Solutions valuation established in 2019.  (ECF No. 13,

PageID.162-63).  Then, in March 2021, Bennet emailed again and apologized for not getting the arrangement formalized.  Bennett said Schwarz Partners was going to "make good" on its promise to have Meier and Williams participate personally in Venture Solutions' past and future successes.  (*Id.* at PageID.163).

At some point nearing the end of Defendants' employment, Greg Eddy, President of Venture Logistics, took "Allocations" from Venture Solutions and distributed proceeds to other TransCorr entities without input from Meier and Williams.  Defendants did not receive any shareholder distributions.  Eddy later proposed dissolving the shared business interests in Venture Solutions.  (*Id.* at PageID.164).

During 2021, Meier and Williams were terminated without cause from Venture Solutions in violation of their employment agreements and shareholder rights.  (*Id.*).

Defendants counter-sue Plaintiff and join Schwarz Partners, TransCorr, and TC Holding Company for breach of contract, promissory estoppel, and wrongful discharge.  In the alternative, they sue Plaintiff and join Schwarz Partners, TransCorr, TC Holding Company, Venture Connect, LLC, TransCorr Brokerage, LLC, TransCorr Leasing, LLC, Transcorr National Logistics, LLC, and Transcorr Global Solutions for unjust enrichment.  Finally, they sue Schwarz Partners, TransCorr, and TC Holding Company for minority membership oppression.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

A complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy."  5B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,

Federal Practice and Procedure § 1357 (3d ed. 1998).  Res judicata is such an affirmative defense.

Generally, a court cannot consider matters outside the complaint when ruling on a motion to dismiss under Rule 12(b)(6).  *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009)  That said, the court may consider material attached to the complaint, "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims.  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  And the court may consider public records and matters of which a court may take judicial notice.  *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).

B.    <u>Discussion</u>

1.    Counterclaims Asserted Against Plaintiff

Fed. R. Civ. P. 13(a) makes clear that "a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . ."  Thus, to be a counterclaim,

the first question is whether the claim is asserted against the opposing party, the Plaintiff here.

Plaintiff argues, in the main, that the claims were not asserted against it because it was not a party to any contract or promise.  Indeed, it did not exist when Defendants began their employment relationship with related entities.  On the surface, however, determining the relationships between the parties, and between Plaintiff and Defendants specifically, requires a review of the writings and the actions of the parties, not simply whether the Plaintiff LLC existed and was an express party to a contract.  Venture Solutions is owned by TC Holdco or TC Holding Company.  The other entities joined to the countercomplaint are also owned by TC Holdco or at least they are all under its corporate umbrella.  When Defendants began their employment, they accepted employment offers from TransCorr Brokerage LLC.  They would report to the president of TransCorr LLC "and its related subsidiaries."  (ECF No. 13-1, PageID.173, 175).  The offers anticipated that their employment agreement would transition from TransCorr LLC to a separate subsidiary of TransCorr LLC, which became Plaintiff Venture Solutions LLC.  (*Id.* at PageID.176).  Neither party alleges, nor does the record contain, an express, written agreement about the employment relationship between Plaintiff, specifically, and Defendants.  Though there is no written agreement

between Plaintiff and Defendant governing Defendants' employment, their employment relationship existed.

The documents attached to the complaint tend to show that negotiations or conversations between Defendants and representatives of the other TC Holdco entities were in implied contemplation or recognition of their relationship with Plaintiff Venture Solutions. As mentioned, Defendants accepted offers of employment from TransCorr Brokerage LLC and their employment transferred to Venture Solutions on its creation—without a written agreement. Defendants attached what they refer to as a "term sheet," which is a six-page "Memorandum of Terms" summarizing Defendants' discussions with TransCorr. Throughout the document are highlights and other edits which reflect that the document is incomplete. Defendants described the summary document as "non-binding." (ECF No. 13-2, PageID.177-82). The memorandum includes terms such as salaries and proposed salary increase structures. It also includes a proposed provision for Defendants to own up to 50% of the equity in the to-be-formed company after a time. (*Id.* at PageID.180).

Also attached to the countercomplaint are the two emails from Tom Bennet, CEO of Schwarz Partners, an entity under the TC Holdco umbrella along with Plaintiff. On July 13, 2020, Bennet emailed Meier and copied Williams in response to a tax question from Meier. He stated that "we are fully intent on

getting the Profits Interest program in place" but was sorry that it had not happened yet.  So there were no K-1 tax forms for Partner's Share of Income.  At that point, the intent was to "roll out this program . . . effective 1/1/2021, but we would still intend to value Venture Solutions as of 1/1/19, which [he thought] is a good thing for" Defendants.  (ECF No. 13-3, PageID.184-85).  Then, on March 17, 2021, Bennet emailed Meier and Williams about the Profit Interest program.  He acknowledged that they had "talked about this topic numerous times over the years and . . . never got anything actually formalized."  The profits interest plan was not created in 2020.  Bennet explained he was "rethinking how we make good on our initial promise to you guys for you to participate personally in Venture Solutions' past and future successes."  Instead of a profit interest plan, Bennet was working on a stock appreciation plan.  Under such a plan the Defendants could participate in the health insurance plan, but would be ineligible as "owners."  (*Id.* at PageID.188).

Attached to Plaintiff's complaint are the confidentiality agreements Defendants signed when they began their employment.  The agreements make clear they are between "TransCorr Brokerage, LLC, TransCorr Leasing, LLC, TransCorr National Logistics, LLC, Transcorr LLC Indiana limited liability companies" and Defendants.  (ECF No. 1-2, 1-3).  Though Plaintiff itself was not

mentioned in the agreement (or in existence when they were executed), Plaintiff relies on the agreements as part of its case against Defendants.

In sum, although Plaintiff was not listed as a party to an agreement or in an email, and persons communicating with Defendants did not sign their names as employees of Plaintiff, these documents, and the parties' reveal that Plaintiff was very much either an implied or contemplated party to agreements or that Defendants' employment with and potential ownership of Plaintiff was the topic of conversation.

Now, the undersigned examines the counterclaims to determine whether any were alleged against Plaintiff.  Any claims alleged against Plaintiff are counterclaims, and joinder of non-parties to those claims will be addressed below.

Defendants allege Plaintiff, Schwarz Partners, TransCorr, and TC Holding Company breached a contract to give Defendants an ownership interest in Plaintiff Venture Solutions.  (ECF No. 13, PageID.165-66).  Defendants alleged that these entities breached the contract by failing to follow the requirements of the "term sheet."  They argue they did not reference the term sheet as the contract, but as evidence of negotiations to give them an ownership interest.  (ECF No. 23, PageID.341).  They allege these same entities should be estopped from denying the existence of their ownership in Plaintiff based on the promise made by Schwarz Partners, TransCorr, and TC Holdco to create Venture Solutions with Defendants

as up to 50% members.  They allege that the promise was clear from the offer sheet, the term sheet, and communications and meetings with the president of TransCorr Brokerage and the CEO of Schwarz Partners. (ECF No. 13, PageID.167-68).  In their argument, Defendants discuss the 2020 and 2021 emails from Schwarz Partners CEO Bennet as the reiteration of that promise during those years, when Venture Solutions existed.  Defendants allege all counter-defendants should be disgorged of the benefit of receiving their expertise to grow Venture Solutions into a profitable company and should be disgorged of "Allocations" made from Venture Solutions to the counter-defendant entities.  They also allege that under these circumstances it would be unjust for counter-defendants to retain the benefit of Defendants' expertise.  (ECF No. 13, PageID.168).

In the view of the undersigned, these counterclaims were raised against Plaintiff.  It is true Plaintiff did not exist when Defendants were hired, and thus did not exist when the alleged contract or promises were first made, and that there is no written contract between Plaintiff and Defendants.  That said, the allegations and countercomplaint attachments paint a picture of an association between the entities and those who work for them that in a way blurs the line between the entities.  For example, Tom Bennet was CEO of Schwarz Partners, an entity that did not own Venture Solutions.  Yet Bennet emailed Defendants about the "promise" made to them before Plaintiff was created about "mak[ing] good" on

that promise in 2020, while Plaintiff existed, to give Defendants an ownership interest in Plaintiff.  The emails plausibly show that Bennet was able to provide an ownership interest in Plaintiff, even though his job title was not directly associated with Plaintiff.  In short, it cannot be said that Defendants did not plausibly allege Plaintiff's involvement in a contract or promise when they alleged and their documents show continuing discussions with associated persons and/or entities  so closely related to Plaintiff that they could decide  on its behalf.  Since these claims were raised against Plaintiff at least beginning around the time of Plaintiff's creation, they are counterclaims.

Defendants assert that Plaintiff, Schwarz Partners, TransCorr, and TC Holding Company wrongfully discharged them because their employment was not at will "and job security was one of the implied terms in the employment agreements."  (ECF No. 13, PageID.170, ¶ 72).  Defendants expressly allege Plaintiff and other entities wrongfully terminated them.  Plaintiff does not dispute this allegation (for purposes of this motion).  This claim was raised against Plaintiff.

The undersigned concludes, however, that the minority shareholder oppression claim should be dismissed because it was not asserted against Plaintiff. The list of counter-defendants against whom the minority shareholder claim is raised against does not include Plaintiff Venture Solutions.  Rather, they allege

TransCorr breached its fiduciary duty to Defendants by seeking to undermine their authority in the company and by trying to replace them within the company. They allege TransCorr, Schwarz Partners, and TC Holdings withheld financial information from Defendants. (ECF No. 13, PageID.169). Defendants argue against dismissal because the claim was raised against Plaintiff's shareholders— but the claim was not raised against Plaintiff. They did not cite authority that a claim against the shareholders is effectively a claim raised against the company, especially where the company is not listed as a defendant in the count.

2. Nature of the Counterclaims and Supplemental Jurisdiction

There is no question that Defendants are not attempting to bring a third-party complaint under Fed. R. Civ. P. 14, as Plaintiff argues in part in the initial brief. They filed a proposed countercomplaint against Plaintiff and attempted to join non-parties to the countercomplaint under Fed. R. Civ. P. 13 and 19. Rule 13 governs counterclaims, which can be either compulsory or permissive. A compulsory counterclaim must be brought if it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim" and does not require "adding another party" over whom the court does not have or cannot obtain personal jurisdiction. Fed. R. Civ. P. 13(a)(1)(a)–(b). Permissive counterclaims are all those that are not compulsory, and may be brought, but need not be. Fed. R. Civ. P. 13(b).

Defendants argue the claims are compulsory against Plaintiff because they arise out of the same transaction or occurrence—"Venture Solutions alleges bad acts with respect to employment and the end of employment.  Those are all part of one transaction and occurrence."  (ECF No. 23, PageID.337).  The parties dispute whether the Court has and should exercise supplemental jurisdiction over the counterclaims, whether they are compulsory or permissive counterclaims. In a different case, Chief Judge Cox declined to dismiss counterclaims for lack of subject matter jurisdiction (supplemental jurisdiction) because the counter-plaintiff and counter-defendants were diverse—the counter-plaintiff could bring those claims in this Court in a separate action based on diversity jurisdiction, which would then be reassigned to Judge Cox as a companion case.  Judge Cox instead went on to  address the other challenges to the counterclaims.  *Saline River Properties, LLC v. Johnson Controls, Inc.*, 2011 WL 13208625, at *1-2 (E.D. Mich. Mar. 18, 2011); *see also Slaughter*, 2020 WL 7342898, at *2 (the defendant needed to establish supplemental jurisdiction over its counterclaims because neither federal question nor diversity jurisdiction existed over the counterclaims). Defendants say the same thing here—if this Court declines supplemental jurisdiction over the claims, they will refile them under uncontested diversity jurisdiction in a new case, which will then be assigned to the District Judge as a companion case.

Since the posture of this case is close to *Saline*, the undersigned will take the same approach and, rather than assessing the Court's supplemental jurisdiction over the counterclaims, will first assess Plaintiff's other arguments against them.[1]

### 3.   Failure to State a Claim

Plaintiff argues Defendants failed to state a claim under Fed. R. Civ. P. 12(b)(6) on their breach of contract, promissory estoppel, and unjust enrichment claims.  When deciding a motion to dismiss under Rule 12(b)(6), the Court must

---

[1] In any event, it is not clear that the Court *must* assess supplemental jurisdiction because the Court has original jurisdiction over the countercomplaint since the parties are diverse and the amount in controversy exceeds $75,000. Courts that have addressed this scenario, even if only in passing, appear to state that assessing supplemental jurisdiction in a case such as this is unnecessary— having original jurisdiction over the counterclaims is sufficient but unneeded (assuming the counterclaims are properly pleaded against the original plaintiff). *See Kimmel v. Cavalry Portfolio Servs., LLC*, 747 F. Supp. 2d 427, 433 (E.D. Pa. 2010) ("Having found that the Court has original jurisdiction over Defendant's Counterclaim in this case, it is not necessary to consider the issue of supplemental jurisdiction."); *Donahue v. Tokyo Electron Am., Inc.*, 2014 WL 12479285, at *12 (W.D. Tex. Sept. 2, 2014) ("The Court has original jurisdiction over Defendants' counterclaims under the Copyright Act and the CFAA, and exercises its supplemental jurisdiction over the other counterclaims because they arise out of the same nucleus of operative fact—specifically, Donahue's post-employment activity."); *cf. MNM Invs., LLC v. HDM, Inc.*, 2019 WL 3430553, at *4 (D. Kan. July 30, 2019) ("The parties acknowledge that the counterclaims at issue are brought under state law and that the parties are all residents of Kansas.  Therefore, the Court does not have original jurisdiction over the counterclaims under 28 U.S.C. § 1331 and § 1332.  The parties dispute whether the Court may exercise supplemental jurisdiction over the counterclaims."); *Graf v. Pinnacle Asset Grp., LLC*, 2015 WL 632180, at *2 (D. Minn. Feb. 12, 2015) ("The Court does not, however, have original jurisdiction over Pinnacle's counterclaims[.] . . . Therefore, if the Court is to exercise jurisdiction over Pinnacle's counterclaims, it must be pursuant to the Court's supplemental jurisdiction.").

"construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of act ion"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B*., 727 F.3d 502, 503 (6th Cir. 2013).

In Michigan, "[t]he essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Mallory v. City of Detroit*, 449 N.W.2d 115, 127 (Mich. App. 1989) (citing *Borg–Warner Acceptance Corp. v. Dep't of State*, 426 N.W.2d 717 (Mich. App. 1988) *rev'd on other grounds,* 444 N.W.2d 786 (Mich. 1989)), *accord, AFT Michigan v. Michigan*, 846 N.W.2d 583, 590 (Mich. App. 2014). To

state a claim for a breach of contract a party must allege "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *AFT Michigan*, 846 N.W.2d at 590. Legal consideration is an essential element of a contract. *Yerkovich v. AAA*, 461 Mich. 732, 740, 610 N.W.2d 542 (2000). "Consideration for an agreement exists where there is a benefit on one side or a detriment suffered, or services done, on the other." *Dep't of Nat. Resources v. Bd. of Trustees of Westminster Church of Detroit*, 114 Mich. App. 99, 104, 318 N.W.2d 830 (1982).

The elements of a promissory estoppel claim are "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 686–687, 599 N.W.2d 546 (1999). An actionable promise "must be clear and definite, while statements that are indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct, cannot serve as the foundation for an actionable reliance." *Bodnar v. St. John Providence, Inc.*, 933 N.W.2d 363, 377 (Mich. Ct. App. 2019) (internal quotations and citation omitted).

To establish an unjust enrichment claim, Defendants must show (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Barber v. SMH (US), Inc*., 509 N.W.2d 791, 196 (Mich. Ct. App. 1993). "In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006).

Plaintiff argues these claims should be dismissed because Defendants did not plausibly allege it was a party to or breached any contract or promise with Defendants. Addressed above, the undersigned is not convinced by this argument. The counterclaims were raised against Plaintiff given the close association and actions between Plaintiff and the other TC Holdco entities. Plaintiff also argues the purported promises are contradicted by the written agreements attached to the countercomplaint: while these agreements discuss Defendants' salaries, there are no allegations Plaintiff failed to pay them in accordance with those terms. This argument is inapposite as Defendants did not allege Plaintiff failed to pay their agreed upon salary; they allege they were due an ownership interest in Venture Solutions that was never created. Lastly, it argues that since Defendants admit there was a contract, any implied contract claims are barred. (ECF No. 16, PageID.241-43). All the same, "[i]t is well established that a plaintiff may raise a

breach-of-contract claim and allege in the alternative that a contract is invalid [or non-existent], meriting equitable relief." *Glaske v. Indep. Bank Corp.*, 2016 WL 298986, at \*10 (Mich. Ct. App. Jan. 21, 2016) (citing *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App 187, 199; 729 N.W.2d 898 (2006)). That Defendants admit an express contract exists is not reason to dismiss the equitable claims raised in the alternative. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 797, 798 (6th Cir. 2016) ("As explained above, we conclude that Solo may plead unjust enrichment in the alternative.").

In the reply brief, Plaintiff argues these claims should be dismissed because the term sheet states it is non-binding and thus cannot establish a breach of contract claim, and that there were no definite terms or consideration for any contract. (ECF No. 24, PageID.355-56).

As for the first of the reply arguments, Defendants argued in their response that their reference to the terms in the term sheet in the breach of contract claim is not as evidence of an express contract, but to show the discussions regarding Defendants' future ownership interests. Defendants do not allege that the term sheet was a contract that was breached. They allege a contract was breached when the counter-defendants did not follow the requirements of the term sheet to provide ownership interests. Since they are not alleging the term sheet was breached, the fact that the term sheet is non-binding is inconsequential. And as Defendants'

counsel correctly asserted at the hearing, a contract in this context need not be in writing, so the fact that they do not allege a written agreement was breached is also inconsequential.

Plaintiff's second reply brief argument—that the promises were indefinite—is directed at the promissory estoppel claim.  As the Michigan Court of Appeals directs, to determine whether a promise existed, "courts must objectively evaluate the circumstances of the transaction, including the parties' words, actions, and relationship." *Bodnar v. St. John Providence, Inc.*, 933 N.W.2d 363, 377 (Mich. Ct. App. 2019) (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546 (Mich. Ct. App. 1999)).  Evaluating the words in the 2020 and 2021 emails from Tom Bennet and the relationships of the parties, the undersigned can infer that Plaintiff, through Bennet and the other entities, promised an ownership interest to Defendants.  The language of the 2020 email, in particular is not indefinite or not specifically demonstrative of an intent of future conduct.  Bennet spoke of his intent to begin the ownership arrangement effective January 1, 2021, and to value Venture Solutions as of 2019.  (ECF Ni. 13-3, PageID.184).  He was not equivocal on the matter in that email.  And the allegations demonstrate that Defendants relied on that promise and continued to work for Plaintiff.  The exact terms of the promise and if or when it was breached can be determined at a later date.  For

purposes of evaluating Plaintiff's Rule 12(b)(6) motion, however, Defendants

stated a claim for promissory estoppel sufficient at this stage.

        4.     Statute of Limitations

Plaintiff argues the breach of contract, promissory estoppel, and unjust

enrichment counterclaims are time barred and should be dismissed.  The parties

agree Michigan has a six-year statute of limitations for these claims.  M.C.L. §

600.5807(9); *Dixon-Brown v. Covenant Cemetery Servs.*, 2022 WL 413904, at *2

(Mich. Ct. App. Feb. 10, 2022).  These claims accrue "at the time the wrong upon

which the claim is based was done regardless of the time when damage results."

*Dixon-Brown*, 2022 WL 413904, at *3.

According to Plaintiff, the "wrongs" were done on November 14, 2014,

when Plaintiff was formed but without an ownership agreement, or at the latest

January 1, 2015, when Defendants began employment without an employment

contract that provided for or contemplated ownership.  Defendants' March 10,

2022, countercomplaint was filed more than six years after those dates.  (ECF No.

16, PageID.238).  Defendants argue the claims accrued at the time of the breach—

when they were terminated without having received the promised ownership

interest.  (ECF No. 23, PageID.341).

   The breach of the contract to provide an ownership interest was alleged to

have occurred when the companies "failed to follow the requirements of the term

sheet" and provide ownership in Venture Solutions.  Taking the countercomplaint

as a whole, including the attached documents, the counter-defendants allegedly

"failed to follow" the requirements throughout Defendants' employment.  It

appears the breach occurred when they were at last not given an ownership stake.

The undersigned finds two potential dates here: Tom Bennet's March 17, 2021

email in which he says he is working on a stock appreciation plan rather than an

ownership plan, or when they were terminated in November 2021.  The

countercomplaint was filed within six years of both dates and thus was timely

filed.

### 5.    Wrongful Termination Claim

Plaintiff argues the wrongful termination claim should be dismissed because

the Defendants could be fired at-will.  It contends at-will employment is presumed

in Michigan and Defendants' allegations do not rebut that presumption, and that an

at-will employee cannot bring an action for wrongful termination unless the

termination was prohibited by statute or was contrary to public policy, neither of

which is present here.  Plaintiff points out the confidentiality agreement between

the parties describes the employment relationship as at-will.  (ECF No. 16,

PageID.243-45).  Defendants insist their employment was not at-will because they

pleaded it was not at-will and their allegations are to be accepted as true at this

stage.  (ECF No. 23, PageID.344).  Plaintiff responds that bare legal conclusions are not to be accepted.  (ECF No. 24, PageID.356-57).

Plaintiff is correct that, in Michigan, absent an indication to the contrary, employment is presumed to be at-will.  *See Kimmelman v. Heather Downs Mgmt. Ltd.*, 753 N.W.2d 265, 268 (Mich. Ct. App. 2008).  But at the pleading stage, the plaintiff or counter-defendant need only allege enough factual matter to allow the Court and opposing parties to infer and have notice of a claim about for-cause employment.  The plaintiff at this stage need not provide evidence establishing for-cause employment to rebut the presumption.  *See id.* ("Because plaintiff *has not alleged anything that would tend to rebut this presumption*, plaintiff must be considered an at-will employee on the basis of the pleadings.") (emphasis added).  And pleading that their employment was not terminable at-will, that job security was an implied term of their employment agreements, is a factual allegation that the Court may accept as true at this stage.

In conflict with its arguments that it was not a party to any contracts or promises before its existence, Plaintiff relies on the confidentiality agreements signed by Meier and Williams to establish their employment with Plaintiff was at-will.  The agreements were signed during September and October 2014, before Plaintiff's existence.  The agreements were between TransCorr and Defendants.  Both agreements state that nothing in the agreement may be construed as

modifying the at-will employment relationship with Plaintiff.[2]  (ECF No. 1-2, PageID.55; ECF No. 1-3, PageID.59).  At the hearing, Defendants characterized this language as boilerplate and relied on their allegations as sufficient at this stage to state the claim.  The term sheet attached to the countercomplaint contemplates for-cause employment.  (*See* ECF No. 13-2, PageID.179, ¶ 3(e)).

The documents perhaps create a question of material fact, but that is not the standard here.  Here, the Court focuses on Defendants' allegations and attachments to its countercomplaint.  Defendants' burden is to give notice of its claims and to state a claim on which relief could be granted.  Accepting their allegations as true and considering the term sheet language, they have met their burden.  Their burden is not to prove their case with concrete evidence.  This claim should not be dismissed for failure to state a claim.

5.     Joinder of Additional Parties

The remaining counterclaims are breach of contract, promissory estoppel, unjust enrichment, and wrongful termination claims.  In each of these the Defendants join some or all of the additional TC Holdco entities.  Defendants

---

[2] The Court may consider documents that are referred to in the complaint that are central to the claims.  The confidentiality agreements were not referenced in the wrongful termination claim, but employment agreements more generally are referenced throughout the countercomplaint, and any such agreements are central to counter-plaintiffs' claims.  And since they were properly attached to Plaintiff's complaint, they are now part of the record.  Finally, Defendants did not challenge Plaintiff's reliance on the confidentiality agreements as such.  Thus, the undersigned finds it appropriate to consider the confidentiality agreements here.

maintain the other  parties are required to be joined under Rule 19 because full relief cannot be given without them, or in the alternative, that they should be joined under Rule 20.  "Joinder is generally favored under the federal rules." *Scott v. Fairbanks Cap. Corp.*, 284 F. Supp. 2d 880, 887 (S.D. Ohio 2003).  Joinder "promote[s] trial convenience and expedite[s] the final determination of disputes, thereby preventing multiple lawsuits.  Single trials generally tend to lessen the delay, expense[,] and inconvenience to all concerned." *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 166 (E.D. Mich. 2012) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)).

The Sixth Circuit applies a three-step analysis to determine whether a party must be joined in an action under Fed. R. Civ. P. 19.  *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001).  First, the Court must determine whether a party who is not joined is a necessary party that should be joined if possible, based on the requirements outlined in Rule 19(a).  *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc*., 181 F.3d 759, 763–64 (6th Cir. 1999); Fed. R. Civ. P. 19(a).  That subsection provides:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

27

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"If the court determines that the person or entity does not fall within one of these provisions, joinder, as well as further analysis, is unnecessary." *Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO*, 822 F.2d 613, 618 (6th Cir. 1987). Second, if deemed a necessary party, the Court must determine whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction. *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345-46 (6th Cir. 1993); Fed. R. Civ. P. 19(a). Third, if joinder is not feasible, the Court asks whether the absent party is indispensable. At this step, "the court must weigh the equities of the situation pursuant to Rule 19(b) and determine if the suit can continue in the party's absence or if the case should be dismissed because the party is indispensable." *Shepard & Assocs., Inc. v. Lokring Tech. LLC*, 2021 WL 4340061, at *5 (N.D. Ohio Sept. 23,

2021) (quoting *Am. Express Travel Related Servs., Co. v. Bank One-Dearborn, N.A.*, 195 F. App'x 458, 460 (6th Cir. 2006)).

Defendants argue the additional parties must be joined because complete relief cannot be accorded on the breach of contract and promissory estoppel claims. They contend the parties were in "continuing discussions" for years and promises were renewed in 2020 and 2021, which were breached when Venture Solutions terminated them.  (ECF No. 23, PageID.336-37).

"Complete relief is determined as between persons already parties, 'and not as between a party and the absent person whose joinder is sought.'" *Laethem Equip. Co. v. Deere & Co.*, 485 F. App'x 39, 44 (6th Cir. 2012) (quoting *Sch. Dist. of Pontiac v. Secretary of U.S. Dept. of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009)). Defendants have not shown it cannot recover complete relief against Plaintiff without the non-parties.  Plaintiff would be liable only in proportion to its percentage of fault, and its percentage of fault can be determined without joinder of the other non-parties. *See id.*  For this reason, joinder of the non-parties is not compulsory.

Defendants also argue that their claims and Plaintiff's claims are part of the same transaction or occurrence, which points to a permissive joinder argument. (ECF No. 23, PageID.337).  Rule 20 governs permissive joinder of parties.  It states that persons or entities may be joined as defendants in a case if:

> A. Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> B. Any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  To determine whether joinder is applicable, "the courts have inquired whether 'there is a logical relationship between the separate causes of action' that the plaintiff seeks to join in a single case. . . .  'The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant.'"  *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 813 (E.D. Mich. 2018) (quoting *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)).  "Stated differently, the plaintiffs' claims must share an aggregate of operative facts."  *Id.* (quoting *Stojcevski v. County of Macomb*, 143 F. Supp. 3d 675, 682-83 (E.D. Mich. 2015)).  If the elements of Rule 20 are satisfied, "[p]ermissive joinder ultimately rests with the sound discretion of the court, which must determine if joinder will comport with the principles of fundamental fairness."  *Shaffer v. Donoghue*, 2019 WL 321422, at *5 (W.D. Ky. Jan. 24, 2019).

In the Sixth Circuit, "[t]he words 'transaction or occurrence' are given a broad and liberal interpretation in order to avoid a multiplicity of suits."  *LASA Per L'Industria Del Marmo Societa Per Azoini of Lasa, It. v. Alexander*, 414 F.2d 143,

147 (6th Cir. 1969) (citation omitted) ("the intent of the Rules is that all issues be

resolved in one action, with all parties before one court, complex though the action

may be").  To determine whether claims arise from the same transaction or

occurrence, the reviewing court evaluates whether there is a logical relationship

between the claims.  *Id.*

Defendants argue Meier's and Williams' ownership interests are common to

each claim and counterclaim here, that their status as employees or owners impacts

all aspect of this case.  (ECF No. 23, PageID.338).  They assert the logical

relationship between the claims and counterclaims is clear.  (*Id.* at PageID.339).

Despite the employment relationship, Plaintiff argues there is no overlap of

operative facts in the different claims.  Plaintiff contends the elements and

evidence required to establish each set of claims are unique.  (ECF No. 24,

PageID.353).

Though the parties are related, the parties' claims are not logically related.

Plaintiff's claims are about Defendants' alleged improper use of computer

technology to misappropriate trade secrets in violation of their fiduciary duties.

Defendants' claims about are the breach of contract and/or promise to make them

part owners in Venture Solutions and termination without cause.  The employment

relationship between the parties is a broad, causal relationship—but for

Defendants' employment, the parties' claims would not exist.  But this alone does

not mean their claims derive from the same transaction or occurrence. Permissive joinder is not satisfied.

The undersigned acknowledges Defendants' position that if their joined parties are not allowed to proceed here, they will file a separate action under diversity jurisdiction that will be assigned to the District Judge as a companion case. If proper, that is their right to do. The question before the undersigned here is whether their claims against the non-parties were properly joined. The undersigned concludes they were not and should be dismissed.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Plaintiff's Motion to Dismiss (ECF No. 16) be **GRANTED IN PART, DENIED IN PART**, and that the minority shareholder oppression claim be dismissed and the non-parties be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 22, 2022                               s/Curtis Ivy, Jr.
                                                   Curtis Ivy, Jr.
                                                   United States Magistrate Judge